# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ESTATE OF KHALIL FARHAT,** *et al.,*

    **Plaintiffs,**

    v.                                                                                     Civil No. 19-03631 (RCL)

**THE ISLAMIC REPUBLIC OF IRAN,** *et al.,*

    **Defendants.**

## PLAINTIFFS' MOTION FOR JUDICIAL NOTICE AND FOR ENTRY OF DEFAULT JUDGMENT AGAINST IRAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Plaintiffs, Estate of Khalil Farhat et al., by counsel, respectfully move the Court to: (1) take judicial notice of all the findings of fact and conclusions of law contained in the Court's May 30, 2003 Memorandum Opinion[1] entered in the related case of *Peterson v. Islamic Republic of Iran,* Civil Action No. 01-02094-RCL, Dkt. 24, attached here as Exhibit 1; and (2) to adopt the findings of fact and conclusions of law contained therein and find them to be fully applicable to this pending matter.

This Motion is based on the following memorandum of points and authorities, the documents on file in this case, and such other information as the Court may allow and consider.

## I.
## PROCEDURAL HISTORY

    a.  **The Attacks**

---

[1] Reported as *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003).

On October 23, 1983 the headquarters of the U.S Marines battalion headquarters in Beirut, Lebanon, was attacked by terrorists, resulting in the deaths of 241 individuals and countless injuries. The October 23, 1983, attack was made possible by Defendants' financial, operational, and technical support of Hezbollah. The actions of Defendants' agents constitute acts of torture, extrajudicial killing, and the provision of material resources for such acts, as those terms are defined in 18 U.S.C. § 2339A.

### b. *Peterson* and Follow-On Cases

The original group of victims brought claims before this Court in *Peterson v. Islamic Republic of Iran,* Civil Action No. 01-02094-RCL, under 28 U.S.C. §1605(a)(7). *See* 01-cv-02094, Dkt. 3.  This Court reviewed extensive evidence presented by both lay and expert witnesses and found the Defendants liable for the bombing. This Court entered judgment for the *Peterson* plaintiffs on May 30, 2003.

There have been at least 20 other cases that have come before this Court arising out of the October 23, 1983 attack. *See Boulos, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 01-02684-RCL ("Boulos" or "Boulos Case"); *Acosta, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 01-02352-RCL ("Acosta I" or "Acosta I Case"); *Valore, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 03-01959-RCL ("Valore" or "Valore Case"); *Estate of Stephen B. Bland, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 05-02124-RCL ("Bland" or "Bland Case"); *Arnold, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 06-00516-RCL ("Arnold" or "Arnold Case"); *Murphy, et al., v., Islamic Republic of Iran, et al.*, Civil Action No. 06-00596-RCL ("Murphy" or "Murphy Case"); *O'Brien, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 06-00690-RCL ("O'Brien" or "O'Brien Case"); *Acosta, et al. v Islamic Republic of Iran, et al.*, Civil Action No. 06-00745-RCL ("Acosta II" or "Acosta

II Case"); *Spencer v. Islamic Republic of Iran, et al.*, Civil Action No. 06-00750-RCL ("Spencer I" or "Spencer I Case"); *Davis, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 07-01302-RCL ("Davis" or "Davis Case"); *Estate of Anthony K. Brown, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 08-00531-RCL ("Brown" or "Brown Case"); *Bonk, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 08-01273-RCL ("Bonk" or "Bonk Case"); *Anderson, et al., v. Islamic Republic of Iran, et al.*, 08-00844-RCL ("Anderson" or "Anderson Case"); *Fain, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 10-00628-RCL ("Fain" or "Fain Case"); *Taylor, et al., v. Islamic Republic of Iran, et al.*, Civil Action No. 10-00844-RCL ("Taylor" or "Taylor Case"); *Kenneth S. Spencer v. Islamic Republic of Iran, et al.*, Civil Action No. 12-00042-RCL ("Spencer II" or "Spencer II Case"); *Hudson, et al. v. Islamic Republic of Iran, et al.,* Civil Action No. 19-0377-RCL ("Hudson" or "Hudson Case"); *Bova, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 15-01074-RCL ("Bova" or "Bova Case"); *Relvas, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 14-1752-RCL ("Relvas" or "Relvas Case"); *Kenneth S. Spencer v. Islamic Republic of Iran, et al.*, Civil Action No. 12-00042-RCL ("Spencer II" or "Spencer II Case"). Each case was filed as related to *Peterson* because they arose out of the same acts and/or incidents as *Peterson*. Like *Peterson* before it, in each case this Court found the Defendants liable for the bombing and awarded judgment in favor of plaintiffs who were U.S. citizens or U.S. government employees or contractors who were killed or injured in that attack, as well as their immediate family members.

The Defendants have never entered an appearance to contest the factual findings of the May 30, 2003, *Peterson* decision, nor have they appeared in any of the follow-on cases.

    **c.** *Estate of Khalil Farhat, et al., v. Islamic Republic of Iran, et al.,* **1:19-cv-03631**

On December 5, 2019, Plaintiffs who were not parties to the prior actions but were injured by the same attack filed the present case against the same Defendants under 28 U.S.C. §1605A. *See* Dkt. 1. An Amended Complaint was filed on March 26, 2020. *See* Dkt. 7. Pursuant to 28 U.S.C. § 1608(a)(4), Plaintiffs served the Defendants on December 22, 2020. *See* Dkt. 18. The Defendants had sixty (60) days to file an answer or responsive pleadings, pursuant to 28 U.S.C. § 1608(c)(1). The Defendants have not filed an answer or responsive pleading.

On March 15, 2021, Plaintiffs filed an affidavit for default against the Defendants. *See* Dkt. 19. On March 17, 2021, the Clerk entered a default against the Defendants. *See* Dkt. 21.

Plaintiffs now respectfully request that this Court take judicial notice of and adopt all of the findings of fact and conclusions of law as to the Defendants contained in its May 30, 2003 Memorandum Opinion in *Peterson* and apply them in this matter. Judicial notice is appropriate here because Plaintiffs' case and *Peterson* both assert the same causes of action against the same Defendants based on injuries arising out of the same terrorist attack. As such, this case and *Peterson* share the same underlying facts and legal issues as related to the Defendants.

## II.
## ARGUMENT

### A. AS IN *PETERSON*, THIS COURT HAS SUBJECT MATTER OVER PLAINTIFFS' CLAIMS

Under 28 U.S.C §1605A(a)(2), the court shall hear a claim against a foreign state if: (1) the foreign state was designated as a state sponsor of terrorism at the time the terrorist attack occurred; and (2) the claimants or the victims were U.S. Government employees or contractors at the time of the attacks, or derive their claims as a family member thereof. In the present case, the first requirement is met because Iran was designated as a state sponsor of terrorism by the U.S. State Department on January 19, 1984, and the State Department maintains that designation. This

designation arose in part as a result of the October 23, 1983 attack. Plaintiffs meet the second requirement because they are victims who were contract employees of the U.S. Government at the time of the attacks or derive their claims as a family member thereof. Pursuant to 28 U.S.C. §1608(e), Plaintiffs must establish a right to relief by evidence satisfactory to the Court. Plaintiffs here provide proof of such claims of relief by affidavit to satisfy the Court's requirements. *See* Affidavit of Hisham Jaber (Exhibit 2), Affidavit of Mehdi Farhat on behalf of the Estate of Khalil Farhat (Exhibit 3), Affidavits of Farhat Family Members Estate of Zeina Mortada Mantach, Issam Farhat, Hussein Farhat, Souhaila Farhat, Mehdi Farhat, Karima Farhat, Hassan Farhat, Estate of Ibrahim Farhat, and Ahmad Farhat (Exhibit 4), Affidavit of Dana Jaber Khatoun (Exhibit 7) and Affidavit of Mohamed Farhat (Exhibit 8).

i. *Plaintiffs' Status as Contractors*

Proof of a Plaintiff's right to proceed under 28 U.S.C. §1605A, including documentation of Plaintiff's status as a U.S. national or employee, is typically submitted for review by a Special Master during the damages phase of the litigation, as the Court has allowed in many of the prior cases listed above. In the present case, Plaintiffs alert the Court's attention to the fact that no document evidence exists establishing the direct victims' status as employees of the U.S. government. It is possible that such documentation never existed. Nevertheless, Plaintiffs assert their status as contract employees based on activities undertaken on behalf of the Marines, with the assent of and consideration from the Marines. "A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." *Hotchkiss v. National City Bank*, 200 F. 287, 293 (S.D.N.Y. 1911). A contract can exist in the absence of written words, as is the case here. The implied contractual arrangements asserted by Plaintiffs satisfy "all the necessary elements of an express contract –

5

including offer, acceptance, and consideration." *Vantage Commodities Financial Services I, LLC v. Willis Limited*, 531 F. Supp. 3d 153, 174 (D.D.C. 2021); "[i]mplied-in-fact contract arises when express offer and acceptance are missing but parties' conduct indicates mutual assent." *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998). Both parties here performed critical services for the Marines in Beirut, with the assent of those Marines and consideration from them.

   1) **Hisham Jaber**

On October 23, 1983, Hisham Jaber was a Lieutenant Colonel in the Lebanese Army. He served as Liaison Officer to the U.S. Multi-National Force (MNF) in Beirut, Lebanon and sustained injuries in the bombing. He was under the command and control of the U.S. Marines throughout the peacekeeping mission, reporting to the Commander of the U.S. Multi-National Forces. *See* Ex. 2.

> While liaison officers are paid by their respective military service, they are assigned by mutual agreement between the U.S. Commander and the foreign service commander to serve on the U.S. Commander's staff. They provide invaluable services in maintaining essential communications, shared intelligence, and coordination services between the Headquarters. In the performance of their duties, they act as agents (employees) of the U.S. Commander.

*See* Exhibit 6, Affidavit of Worley Reed.

Hisham Jaber performed services for the U.S. Marines, including assisting and advising the U.S. MNF Commander, providing communication and logistics support to the U.S. forces, resolving disputes with adverse groups, processing and verifying intelligence, carrying messages between the Lebanese Army and the U.S. MNF, and generally managing issues and solving problems that arose as the mission evolved. *See* Ex. 2; Ex. 6. In exchange for the services he provided to the U.S. MNF, he received access to the Marines compound and was given the full

6

protection of the U.S. Marines. In September 1983, then-U.S. MNF Commander Timothy Geraghty wrote to Lebanese Army Commander General Ibrahim Tannous, citing an incident in which two American Army personnel inadvertently entered Amal territory and were detained until Hisham Jaber intervened and negotiated their release. Describing his diligence in securing their release, Commander Geraghty said of Hisham Jaber:

> Though I already held him in high regard, his performance on 29 Sep 1983 placed me forever in his debt…what could have been a very serious and dangerous situation was expertly handled by an officer of courage, tact, and diplomacy…I am especially pleased to have him assigned as my liaison officer.

*See* Ex. 2.

The relationship between Hisham Jaber and the U.S. Marines satisfied the essential elements of a contract. "An implied in fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (App. D.C. 1993). Hisham agreed to support the U.S. Marines, and act at the exclusive instruction of the U.S. MNF Commander in exchange for protection and benefits reserved for U.S. Marines.

The mutual assent of each party was demonstrated by the nature and duration of the agreement: from September 1982 until the Marines left in early 1984, Hisham Jaber reported to the Commander of the U.S. MNF and carried out the duties proscribed to him by the U.S. government. *See* Ex. 2. The Marines continued to provide him with protection and access. *See* Ex. 6.  "A 'manifestation' of assent is not a mere appearance; the party must in some way be responsible for the appearance. There must be conduct and a conscious will to engage in that conduct." Restatement (Second) on Contracts, §19.

7

As consideration for his service to the U.S. MNF, Hisham Jaber received benefits for the specific nature of his work on behalf of the Marines. "Consideration is a benefit received by the promisor or a detriment incurred by the promisee. The promisor receives a benefit in exchange for a promise when he receives some performance or forbearance which he would otherwise not be entitled to receive." Williston on Contracts § 7:4 (4th ed.). As a liaison to the U.S. MNF Commander, Hisham Jaber was given protection and access that would not otherwise have been available to him as an officer of the Lebanese Army. It was only in exchange for the services he provided as liaison to the U.S. MNF Commander that he received those benefits. *See* Ex. 6.

  2) **Khalil Farhat**

Plaintiff Khalil Farhat was present at the U.S. Marine Barracks when it was bombed at 6:25 a.m. on October 23, 1983. He was killed instantly. *See* Ex. 3. Khalil Farhat was a Lebanese national who worked and frequently slept at the BLT headquarters throughout the duration of the peacekeeping mission. *Id*. In the years before the Marines' arrival in Lebanon, Khalil Farhat was a maintenance worker and painter at the Lebanese civil aviation administration building at the Beirut International Airport. *Id*. Khalil Farhat continued to work at the building when it became the headquarters of the U.S. Marines Battalion Landing Team (BLT). *Id*.; *see also* Ex. 5, Affidavit of Joe Jacobs, USMC, Ret. At some point during the transition he was screened, *see* Ex. 6, and provided with an access card from the U.S. Marines that granted him access to the Marines compound and the interior of the BLT. *See* Ex. 3.

Khalil Farhat was valuable to the Marines because he was familiar with the building and the location. He also provided occasional translation services. *See* Ex. 5. Khalil Farhat was allowed to set up a small shop inside the BLT where he sold candy, soda, cigarettes and other sundry items to the Marines. *See* Ex. 3; Ex. 5. He also had a designated sleeping area inside the BLT and

8

stayed there frequently. No other civilian slept inside with the Marines. *See* Ex. 5. Khalil Farhat was inside the BLT when it was attacked on October 23, 1983. His remains were flown to the U.S. Army mortuary in Frankfurt, Germany, where he was identified with the help of Marines at the MAU headquarters in Beirut. *See* Ex. 3; Ex. 5.

It is unknown whether a written contract ever existed between Khalil Farhat and the U.S. Marines, Ex. 3, but one can be inferred from the conduct of both parties in light of the circumstances. *Vereen v. Clayborne,* supra; *see also* Ex. 6. Khalil Farhat provided certain benefits to the U.S. Marines and they in turn provided benefits to him. The U.S. Supreme Court defines "an agreement 'implied in fact'" as "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Baltimore & O.R. Co. v. United States*, 43 S. Ct. 425, 427 (1923); "[w]hile a 'Meeting of the minds' or mutual assent 'is most clearly evidenced by the terms of a signed written agreement'…such a signed writing is not essential to the formation of a contract. The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds…" *Kramers Associates, Inc. v. Ikam, Ltd.*, 888 A.2d 247 (D.C.Cir. 2005), citing *Davis v. Winfield*, 664 A.2d at 883. That both parties assented to the arrangement, and that there was consideration given on both sides, is clear from the fact that Khalil Farhat provided custodial and translation services to the U.S. Marines for the duration of the peacekeeping mission until his death on October 23, 1983, and that the U.S. Marines allowed him to operate and profit from his kiosk as well as sleep in the BLT building throughout that time.

### B.  THIS COURT SHOULD TAKE JUDICIAL NOTICE OF AND ADOPT ITS PREVIOUS FINDINGS REGARDING LIABILITY OF THE IRANIAN DEFENDANTS FOR THE OCTOBER 23, 1983 BOMBING OF THE MARINE BARRACKS IN BEIRUT, LEBANON

Plaintiffs in this action are victims of the October 23, 1983 suicide bombing of the U.S. Marine Barracks in Beirut, Lebanon. As alleged in Plaintiffs' Complaint and Plaintiffs' Amended Complaint, and as found in *Peterson*, the Defendants provided material support for the attack that led to Plaintiffs' injuries. It is therefore appropriate for the Court to take judicial notice of its finding in *Peterson* that the Defendants supported the attack and are therefore liable for the injuries that flowed from it.

In *Peterson*, the Defendants defaulted and did not make an appearance. Similarly, the Defendants have also defaulted and failed to answer in this case. *See* Dkt. 21.

The issues pertaining to the Defendants' liability in this matter are the same as those that were before the Court in *Peterson*. Accordingly, the Court's prior findings regarding liability in *Peterson* may properly be applied in this case. As Plaintiffs' injuries were all caused by the suicide bombing of the U.S. Marine Barracks in Beirut, Lebanon, as described in *Peterson*, judicial economy and public policy favor adoption of the same findings of liability in this case.

Pursuant to Federal Rule of Evidence 201, this Court may take judicial notice of the findings of fact in *Peterson* because, as described in the Memorandum Opinion, they are capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Once the facts are judicially noticed, they will be conclusive as to the liability of the Defendants in this case, thereby obviating the need for a further trial on the issue of the Defendants' liability.

This Court and others have taken judicial notice of previously entered findings of fact and conclusions of law in other cases involving the Foreign Sovereign Immunities Act ("FSIA"). Where a Court has entered findings of fact and conclusions of law regarding a single attack, those findings are subsequently applied to later filed cases with different plaintiffs arising out of

the same attack. *See, e.g., Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, 2013 U.S. Dist. LEXIS 11564 at *71 (D.D.C. Jan. 29, 2013)(citing *Botvin v. Islamic Republic of Iran*, 510 F. Supp. 2d 101, 103 (D.D.C. 2007); *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53, 54 (D.D.C. 2011)).

Plaintiffs therefore request that the Court adopt the findings of fact and conclusions of law regarding the Defendants' liability for the terrorist attacks in *Peterson* and appoint a Special Master to hear evidence regarding Plaintiffs' damages to support entry of Judgment against Defendants in this case.

### III.
### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court take judicial notice pursuant to Federal Rule of Evidence 201 of the findings of fact in the *Peterson* case regarding the Defendants' liability for Plaintiffs' injuries arising out of the bombing of the U.S. Marine Barracks in Beirut, Lebanon. Plaintiffs further request that the Court appoint a special master or magistrate to determine an appropriate damages award for each Plaintiff to support entry of judgment against Defendants.

February 22, 2022                                                                     **Respectfully submitted,**

                                                         **FAY LAW GROUP, P.A.**

                                                         */s/ Amanda Fox Perry*
                                                         Amanda Fox Perry
                                                         6205 Executive Boulevard
                                                         Rockville, MD 20852
                                                         (202) 589-1300
                                                         Amanda.perry@faylawgroup.com

                                                         *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the Defendants in this action could not be sent a copy of Plaintiffs' Motion for Judicial Notice and for Entry of Default Judgment Against Iran; Memorandum of Points and Authorities in Support Thereof, and attached exhibits, as they have not yet entered an appearance and appear not to have acknowledged other efforts to contact them in this case or others similar to it.