# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ESTATE OF KHALIL FARHAT,** *et al.,*

   **Plaintiffs,**

   v.                                                                              Civil No. 19-CV-3631 (RCL)

**THE ISLAMIC REPUBLIC OF IRAN,** *et al.,*

   **Defendants.**

## PLAINTIFFS' RENEWED MOTION FOR JUDICIAL NOTICE AND FOR ENTRY OF DEFAULT JUDGMENT AGAINST IRAN; SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

COMES NOW Plaintiffs, Estate of Khalil Farhat, et al., by and through Counsel, in response to this Court's Order dated July 11, 2022, ECF 25, requesting supplemental briefing on whether District of Columbia law or Lebanese law applies to the claims of the Lebanese national family member plaintiffs.

## Background and Procedural History

This case arises from the October 23, 1983 bombing of the United States Marine Barracks in Beirut, Lebanon. Plaintiffs include the Estate of Khalil Farhat[1], who was killed in the attack, and Hisham Jaber, who was injured. Farhat and Jaber were contractors of the United States government. On February 22, 2022, Plaintiffs filed a motion for default judgment on liability asking the Court to take judicial notice of prior cases arising from the Marine Barracks bombing. ECF 24.

---

[1] This Court's Order, dated July 11, 2022, cited the decedent as "Ahmad Khalil Farhat" in the second line of the first paragraph. The decedent's name is Khalil Farhat. Ahmad Khalil Farhat is the decedent's son.

On July 11, 2022, the Court dismissed the Motion without prejudice. In its Order, the Court found that the contractors could state claims under 28 U.S.C. § 1605A(c). The other plaintiffs in this case are Lebanese nationals who are members of the families of Farhat and Jaber. They claim that they suffered severe emotional distress in the aftermath of the attacks on their loved ones. However, the Court noted that certain plaintiffs had not successfully established their eligibility to bring these claims because, as foreign national family members, they do not have claims under 28 U.S.C. § 1605A(c), the federal private right of action. Although plaintiffs may be eligible to bring claims under the law of the forum or the law of their domicile, plaintiffs did not argue which law should apply. Furthermore, plaintiffs did not provide the court with elements of causes of action under either District of Columbia or Lebanese law and had not provided the court with evidence of what the law of Lebanon is.

## **Argument**

Plaintiffs contend that they are eligible to bring claims under the terrorism exception; that the law of the forum should apply; that District of Columbia law provides a cause of action for the harms suffered; and that alternatively the law of Lebanon is also consonant with the law of the forum, yielding no difference in result if applied.

The plaintiff family members provide evidence of what the law of Lebanon is, including evidence that it is unchanged since other courts of this district have applied it to the claims of foreign national family members.

### **I. All Plaintiffs Are Eligible to Bring Claims Under the Terrorism Exception**

All of the Farhat Plaintiffs are eligible to bring claims arising from the Marine Barracks bombing: the contractors have claims pursuant to the federal private right of action in § 1605A(c), and the remaining foreign national family members may "pursue claims under

2

applicable state and/or foreign law." *See, e.g. Barry v. Islamic Republic of Iran,* 437 F. Supp. 3d 15 (D.D.C. 2020) (Contreras, J.) ("*Barry II*") *Estate of Doe v. Islamic Republic of Iran,* 808 F. Supp. 2d 1 (D.D.C. 2011) (Bates, J.) ("*Doe I*"); *see also* 28 U.S.C. § 1606 (stating that, once waiver of sovereign immunity is established under § 1605, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances").

### a. The Estate of Ibrahim Farhat, governed by Lebanese law, has standing to bring a claim.

Further, although certain family member plaintiffs are now deceased and are therefore represented in this action by a legal representative, each of these estate plaintiffs have standing, or the "power…to bring and maintain legal claims." *Barry II*, 437 F. Supp. 3d at 36 (internal quotation marks removed) (quoting *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 85 (D.D.C. 2017)); *see also Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 12-13 (D.D.C 2011)). This question is governed by the law of the state which also governs the creation of the estate. *Id*.

As the Court noted in *Barry*, Lebanese law "provides that a claim for compensation for [] emotional distress survives the passing of the individual and may be asserted by the decedent's heir(s)." *Barry II*, 437 F. Supp. 3d at 42; *see also* <u>Affidavit Relating to Issues Arising Under Lebanese Law</u>, Exhibit 1, at ¶ 3.2.1("Among the decedent's estate, the heirs shall come into legacy of the claim for damages that was at the decedent's disposal"); ¶ 3.2.2.1 ("The victims' heirs will be entitled to exercise the claim for damages that the decedent disposed of, whether the latter had already effectively instituted such claim before his death or not.") Because decedent Ibrahim Farhat had a claim for emotional injuries caused by the death of his father under the FSIA and District of Columbia law, (as described in more detail below) the estate, through the

personal representative appointed by the heirs, has standing under Lebanese law to bring those claims.

## II. **Family members may pursue claims pursuant to applicable State and/or Foreign Law.**

The next step is to determine whether the law of Lebanon or the law of the District of Columbia applies to the claims of the foreign family member plaintiffs.

### a. Choice of Law Analysis

Where the federal cause of action is not available, courts must determine whether a cause of action exists under state or foreign law and engage in a choice of law analysis. *Doe I,* 808 F. Supp. 2d at 26, 27. Federal courts addressing FSIA claims in the District of Columbia apply the choice of law rules of the forum state. *Id.* (citing *Oveissi v. Islamic Republic of Iran*, 573 F. 3d 835, 840 (D.C. Cir. 2009); *Dammarell v. Islamic Republic of Iran*, ("*Dammarell II")*, 2005 WL 756090, at *18.) Plaintiffs ask the Court to look to the District of Columbia's choice of law rules.

The choice of law rules in the District of Columbia sets forth a multi-step process. First, the court must determine whether a conflict exists between the forum and the alternative jurisdiction. *Id.*, at 28 – 30. A conflict of laws does not exist when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented. *USA Waste of Maryland, Inc., v. Love*, 954 A.2d 1027, 1032 (D.C. 2008).

The second step is only employed when a conflict is found to exist; in such cases, a "'constructive blending' of the 'government interests' analysis and the 'most significant relationship' test" is employed to determine which law to apply. *Barry II,* 437 F. Supp. 3d 15, at 44 – 48 (quoting *Oveissi I*, 573 F. 3d at 842).

The governmental interest analysis requires a court to "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most

advanced by having its law applied to the facts of the case under review." *Oveissi I*, 573 F. 3d at 842.

To determine which jurisdiction has the most significant relationship to a case, a court must "consider the factors enumerated in the Restatement [(Second) of Conflict of Laws] § 145." *Id.* at 40. The four Restatement factors are: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." *Oveissi*, 573 F. 3d 835 at 843, citing Restatement [(Second) of Conflict of Laws] § 145(2) (1971). The Restatement also references the "needs of the interstate and the international systems, the relevant policies of the forum, the relevant policies of other interested states, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied." *Dammarell II*, 2005 WL 756090 at *18. As a general rule, the law of the forum governs, "unless the foreign state has a greater interest in the controversy." *Kaiser-Georgetown Cmty. Health Plan v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985).

This Court has previously determined that the proper approach in causes of action arising under the terrorism exception to the FSIA is to apply District of Columbia law when assessing the intentional infliction of emotional distress claims asserted by non-U.S. relatives of U.S. government employees and contractors. *Barry II*, 437 F. Supp. 3d at 47-50. The Court's conclusion in *Barry II* is consistent with the approach of other courts in this jurisdiction. *See, e.g., Doe II*, 943 F. Supp. 2d at 183; *Owens v. Republic of Sudan*, 864 F. 3d 751, 808-09 (D.C. Cir. 2017) ("*Owens II*"); *Owens v. Republic of Sudan,* 826 F. Supp. 2d 128, 155-57; (D.D.C. 2011) ("*Owens I*"); *Doe I*, 808 F. Supp. 2d at 31, 32 ("Consistent with *Dammarell* and other

FSIA cases, United States domestic law remains more appropriate in state-sponsored terrorism cases than foreign law. Furthermore, in light of the 2008 amendments to FSIA that seek to promote uniformity and extend access to U.S. federal courts to foreign national immediate family members of victims of terrorism, the law of the forum state, the District of Columbia, should provide the rule of the decision").

   b. **Claims for emotional distress arise under Lebanese law and District of Columbia law.**

The first choice of law issue is to determine whether a conflict exists between the law of the forum and the law of the alternative jurisdiction. Other cases before this Court have previously held that no conflict exists:

> District of Columbia law parallels Lebanese law regarding the availability of a claim for emotional distress, solatium, and/or consortium related to the wrongful death or tortious injury of an immediate relative; that Lebanese law allows for the award of compensation for moral damages, such as death or tortious injury of an immediate relative, and that Lebanese law permits an heir of a decedent…[to] bring the equivalent of a 'Survival Act' claim under District of Columbia law [D.C. Code § 12-101] on behalf of the heirs to recover damages for emotional distress suffered by a decedent before death, that court concluded that the laws of the different jurisdictions …would produce the identical result on the facts presented.

*Doe I,* 808 F. Supp. 2d at 21, quoting *USA Waste*, 954 A. 2d at 1032.

The legal opinion attached here as Exhibit 1 affirms the Court's conclusions in *Doe*, *Barry*, and *Owens*. Lebanese law expressly provides that emotional distress may be compensated provided that a legitimate kinship or marriage alliance is established between the claimant and initial victim. Exhibit 1, ¶ 3.1.2, citing Article 134 of the Code of Obligations and Contracts (C.O.C.). This applies for claims brought by heirs of deceased victims. It also allows claims for reparation of collateral damage for victims by ricochet:

> Sometimes the damage suffered by the victim oversteps the latter and reaches persons connected to him/her with emotional or economic ties…Such damage being a personal one to the victim by ricochet is subject of an action for independent reparation.

¶ 3.3.1.1

The damages sought can be material as well as moral distress. Article 134 C.O.C. "expressly provides for the reparation of the 'sentimental interest' suffered by the victim by ricochet, connected to the victim by legitimate kinship or by relative by marriage." ¶ 3.3.1.2. To establish a claim for moral damages, a plaintiff must prove a wrongful, negligent, or reckless act that can be causally connected to the resulting damage incurred by the immediate victim or the one suffered by his close relatives. ¶ 3.1.3

The law of Lebanon allows claims for moral and material damages to be brought by heirs acting in the name of the victim. *See* Exhibit 1, ¶ 3.2.1("among the decedent's estate, the heirs shall come into legacy of the claim for damages that was at the decedent's disposal"); ¶ 3.2.2.1 ("the victim's heirs will be entitled to exercise the claim for damages that the decedent disposed of, whether the latter had already effectively instituted such claim before his death or not.")

Accordingly, this cause of action is available to immediate family members such as the Farhat Plaintiffs. Likewise, District of Columbia law provides that for any individual in whose favor a right of action has accrued for any cause prior to his death" that right of action "survives in favor of …the legal representative of the deceased" (D.C. Code § 12-101).

Therefore, where an individual or his legal representative seeks compensation for emotional distress, solatium, or loss of consortium suffered as a result of the death or injury of an immediate family member, there is no conflict between what District of Columbia law provides and what Lebanese law provides.

Where, as here, "no conflict of laws exists" between the relevant forums, "[i]t is unnecessary to engage in a conflict of laws analysis." *Young Women's Christian Ass'n of the Nat'l Cap. Area, Inc. v. Allstate Ins. Co. of Canada*, 275 F.3d 1145, 1150 (D.C. Cir. 2002).

c. **The Law of the Forum Should Apply**

This Court's Order cited several FSIA cases in which the Court held that the law of domicile should provide the rule of decision. ECF 25. ("Courts in this District frequently apply the law of the plaintiffs' domicile to non-U.S. national family members' claims. *See, e.g., Borochov v. Islamic Republic of Iran*, No. 1:19-cv-2855 (TNM), 2022 WL 656168, at *12-15 (D.D.C. Mar. 4, 2022); *Henkin v. Islamic Republic of Iran*, 18-cv-1273, 2021 WL 2914036, at *5-13 (D.D.C. July 12, 2021); *Est. Of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 684 F. Supp. 2d 34, 39-42 (D.D.C. 2010)"). In each of the cited cases, the Court held that the law of Israel, rather than United States tort law, governed tort-based claims brought by victims' Israeli family members. It was not clear from the face of the opinions in these cases whether a conflict exists, or existed, between the law of the District of Columbia and the law of Israel, but the fact that the Court applied the constructive blending test indicates that a conflict was present. Here, where the legal opinion provided to the Court (Exhibit 1) makes clear that the application of District of Columbia law or Lebanese law would yield identical outcomes, there is no need to apply the constructive blending test and the Court should instead apply the forum law.

### III. <u>DC Law Provides Cause of Action for the Harms Suffered</u>

The District of Columbia—adopting the Restatement (Second) of Torts elements of IIED—requires plaintiffs to prove that a defendant (1) engaged in "extreme and outrageous conduct" (2) that "intentionally or recklessly" (3) "cause[d] severe emotional distress[.]" *Republic of Sudan v. Owens*, 194 A.3d 38, 41 (D.C. 2018) (quoting Restatement (Second) of Torts, § 46 (Am. L. Inst. 1965)). While a plaintiff is generally required to have been present at the time of the injury in order to recover on an IIED claim, the D.C. Court of Appeals has explained that this "presence

8

requirement" does not apply in FSIA cases where "the plaintiff's severe distress arises from a terrorist attack that killed or injured a member of his or her immediate family." *Id.* at 45.

Consequently, courts in this Circuit allow FSIA plaintiffs to recover for IIED under District of Columbia law, even when they were not present at the time of the injury. *See, e.g., Maalouf v. Islamic Republic of Iran,* 514 F. Supp. 3d 280, 287-88 (D.D.C. 2021) (Bates, J.); *Fritz v. Islamic Republic of Iran*, 466 F. Supp. 3d 13, 17–20 (D.D.C. 2020) (Moss, J.).

The family members in this case would satisfy the Restatement (Second) elements of IIED incorporated under District of Columbia law. First, Iran intentionally provided material support to Hezbollah which foreseeably resulted acts of terrorism. Second, the Marine Barracks bombing was "intended to cause the highest degree of emotional distress" and did in fact "create [] immediate and ongoing pain and suffering for [those] family member[s]." *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 26 (D.D.C. 2009) ("*Heiser II*"). This plainly qualifies as extreme and outrageous context. *See Ewan v. Islamic Republic of Iran*, 466 F. Supp. 3d 236, 246 (D.D.C. 2020) (Bates, J.) (explaining that "acts of terrorism by their very definition amount to extreme and outrageous conduct").

Third, the family members have suffered severe emotional distress from the injuries and death/loss of their loved ones. *See* Affidavits of Plaintiffs, Exhibit 2. Accordingly, the family member plaintiffs are able to recover under District of Columbia law.

## **Conclusion**

For all of the reasons stated above, all Plaintiffs request that a default judgment be entered as to liability only against Defendants Islamic Republic of Iran and the Iranian Ministry of Information and Security. Plaintiffs further request that District of Columbia law be applied to

the Lebanese national plaintiffs. In the alternative, should this Honorable Court disagree, Plaintiffs respectfully request that the law of Lebanon be applied to those Plaintiffs.

March 21, 2023 **Respectfully submitted,**

**FAY LAW GROUP, P.A.**

_____
Amanda Fox Perry
6205 Executive Boulevard
Rockville, MD 20852
(202) 589-1300
Amanda.perry@faylawgroup.com

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

 I hereby certify that the Defendants in this action could not be sent a copy of Plaintiffs' Renewed Motion for Judicial Notice and for Entry of Default Judgment Against Iran; Supplemental Memorandum of Points and Authorities in Support Thereof, and attached exhibits, as they have not yet entered an appearance and appear not to have acknowledged other efforts to contact them in this case or others similar to it.

               _____
               Amanda Fox Perry